781 So.2d 1199 (2000)
Paul E. GREEN
v.
The NEW ORLEANS SAINTS.
No. 2000-C-0795.
Supreme Court of Louisiana.
November 13, 2000.
Sammie Maurice Henry, Baton Rouge, LA, Counsel for Applicant.
Simeon Bernard Reimonenq, Jr., Counsel for Respondent.
Robert Leo Hackett, New Orleans, LA, Counsel for National Football League Player's Association and James Dombrowski (Amicus Curiae).
VICTORY, J.
We granted a writ in this workers' compensation case to determine whether the lower courts correctly determined that the employer, the New Orleans Saints football team (the "Saints"), is entitled to an offset for a payment made to the plaintiff, Paul E. Green ("Green"), pursuant to an August 19, 1997 "Agreement and Release," against workers' compensation benefits based upon a time period rather than a dollar-for-dollar basis as provided for in La. R.S. *1200 23:1225(D). After reviewing the record and the applicable law, we reverse the lower courts and find that the Saints are entitled to an offset for the full amount of the "Agreement and Release" payment on a dollar-for-dollar basis under La. R.S. 23:1225(D).

FACTS AND PROCEDURAL HISTORY
Green entered into a contract to play professional football with the Saints for the 1997 football season (the "Contract"). The Contract went into effect on April 7, 1997 and was to end on February 29, 1998, unless extended, terminated, or renewed. Green's base salary was $105,000.00. Green sustained a right knee injury on July 14, 1997, and shortly thereafter, although the exact date is unclear, suffered a hernia injury, both prior to the start of the 1997 season. He underwent a hernia repair and an arthroscopy on his right knee on August 20, 1997.[1] On August 19, 1997, the Saints and Green entered into a "Agreement and Release," acknowledging that Green had an inguinal hernia, that his convalescence period would be 4-6 weeks, and that in exchange for a payment of $38,210.88, plus reasonable and customary medical and rehabilitation expenses for his hernia injury, Green released the Saints "from any and all claims arising from or related to [his] employment" and "any medical care incident to such employment." In addition, Green released the Saints from their obligation to pay his salary and medical expenses under Paragraphs 5 and 9 of the Contract, effectively terminating Green's contract with the Saints. On July 8, 1998, Green filed a LDOL-WC 1008 alleging entitlement to workers' compensation benefits for knee and hernia injuries. He has not returned to playing professional football.
In his workers' compensation suit, Green alleged that he was entitled to the maximum workers' compensation benefits of $341.00[2] per week from August 19, 1997 minus a four to six weeks offset, representing the period of time for which he was paid the $38,210.88 settlement. He contends that the Saints can utilize their dollar-for-dollar offset only against the amount due under workers' compensation for the 4-6 week recuperative period of time as set forth in the Agreement and Release and Contract, and not against a future workers' compensation benefit. The Saints contend that they are entitled to a dollar-for-dollar credit for the $38,210.88 paid to the claimant and that they are not obligated to pay weekly indemnity benefits until the $38,210.88 is exhausted. If Green is awarded $341.00 per week as he has requested, he would receive approximately $17,732.00 per year, meaning that under the Saint's theory, Green would not begin to receive workers' compensation benefits for over two years from August 19, 1997, while under Green's theory, he would begin to receive these benefits six weeks after August 19, 1997.
The case was submitted on briefs, with the parties stipulating that the only triable issue was whether the Saints were entitled to an offset, and if so, for how much. The workers' compensation judge agreed with Green on the offset issue and found that the Saints were entitled to a dollar-for-dollar credit for workers' compensation benefits due during the six weeks time period which was paid pursuant to the *1201 Agreement and Release. The workers' compensation judge also found that Green was "entitled to weekly workers' compensation benefits in the amount of Three Hundred Forty One Dollars($341.00) per week after the expiration of the six week period, for his knee injury and related medical expenses."[3] The court of appeal affirmed the workers' compensation judge's ruling on the offset issue, but appears to have remanded all other issues, including Green's entitlement to SEB's, back to the workers' compensation judge for further proceedings.[4]Green v. New Orleans Saints, 99-1057 (La.App. 5 Cir. 2/16/2000), 757 So.2d 36. We granted the Saints' writ to decide the offset issue. Green v. New Orleans Saints, 00-0795 (La.5/5/2000), 760 So.2d 1185.

DISCUSSION
La. R.S. 23:1225(D) provides:
The compensation benefits payable to a professional athlete under any provision of this Chapter shall be reduced or offset by an amount equal to the total amount of benefits, wages, or other type of payment mentioned in any part of this provision on a dollar-for-dollar basis and not just on a week-to-week basis, if a professional athlete receives payment or remuneration from any of the following or payment of any type from any of the following:
(1) Any wages or benefits payable or paid to the athlete.
(2) A collective bargaining agreement.
(3) A contract of hire of any type.
(4) Any type of severance pay.
(5) Any type of injured reserve pay.
(6) Any type of termination pay.
(7) Any grievance or settlement pay.
(8) Any worker's compensation benefit of any type.
(9) Any other payment made to the professional athlete by the employer pursuant to any contract or agreement whatsoever.
*1202 This is a workers' compensation statute that applies only to "professional athletes." It allows an offset against workers' compensation benefits of a broad range of payments made to the player, including any wages, any grievance or settlement payments, or "any other payment.. pursuant to any contract or agreement whatsoever." As both lower courts recognized, under La. R.S. 23:1225(D), the Saints would clearly be entitled to an offset for the total amount of the $38,210.88 payment, as the statute provides for an offset by an amount equal to the total amount of the payment paid on a dollar-for-dollar basis.
However, the workers' compensation judge found that the Contract between Green and the Saints provided Green with rights in excess of La. R.S. 23:1225(D).[5] The Contract was prepared by the National Football League and the NFL Players' Association and is the standard contract used by all teams in the NFL. Paragraph 10 of the Contract provides:
WORKERS' COMPENSATION. Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation. (Emphasis added.)
The lower courts found that this provision was ambiguous in that it could be interpreted to mean that the parties contracted to an offset based on time (four to six weeks, i.e., the "period during which he [was] entitled to workers' compensation benefits") or based on the dollar-for dollar amount ($38,210.88). Relying on the Fourth Circuit's decision in Ricketts v. New Orleans Saints, the court of appeal found that "the defendant waived any right to a dollar-for-dollar offset under R.S. 23:1225 by signing this contract and by not incorporating similar language [found in the statute]." 757 So.2d at 39 (citing Ricketts v. New Orleans Saints, 96-0760 (La. App. 4 Cir. 12/4/96), 684 So.2d 1050, writ denied, 97-0020 (La.3/7/97), 689 So.2d 1373)[6]. Other courts that have not allowed *1203 a dollar-for-dollar offset have reasoned that because the employer's obligation to pay benefits for an injury under a player's contract ceases with the expiration of the contract, it is unjust to allow the employer a credit for the payment of those benefits against workers' compensation benefits that are not payable until after the expiration of the player's contract. See Anderson v. Pro-Football, Inc., Dir. Dkt. Nos. 88-55, Government of the District of Columbia, Department of Employment Services, Decision of the Director (Mar. 3, 1995) (holding that the offset under Paragraph 10 is limited to compensation payable during the one year contract period when a player's salary was actually paid); accord Tampa pay Area NFL Football v. Jarvis, 668 So.2d 217 (Fla. Dist. Ct.App. 1st Dist. 1/23/96); In the Matter of Arbitration Between Miami Dolphins, Ltd. v. Smith, Order and Decision of Sam Kagel National Arbitrator (April 21, 1996).
Recently, the First Circuit was presented with the same issue in Dombrowski v. New Orleans Saints, 99-0008 (La.App. 1 Cir. 3/31/2000), 764 So.2d 980. In that case, Jim Dombrowski was injured during a football game on November 17, 1996 and did not play during the 1997 season. In lieu of his regular salary for the 1997 season, he received $200,000 pursuant to an injury protection provision contained in a Collective Bargaining Agreement. He began receiving weekly compensation benefits of $341.00 at the conclusion of the 1997 season and the Saints sought a credit for the $200,000 on a dollar-for-dollar basis, rather that a week to week basis. The First Circuit, expressly disagreeing with the Fourth Circuit's opinion in Ricketts, held that paragraph 10 of the Contract was clear and explicit and did not amount to a waiver of the statutory dollar-for-dollar offset set forth in La. R.S. 23:1225(D). We agree.
When the words of a contract are clear, explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. Further, laws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written. Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 294 (La.1986).
While the parties may disagree as to the interpretation of paragraph 10 of the Contract and there are sound arguments for interpreting the provision to provide the player with greater rights than those afforded by La. R.S. 23:1225(D), we find that the language of paragraph 10 of the Contract is in fact consistent with the language of La. R.S. 23:1225(D). Under paragraph 10, "[a]ny compensation paid to [Green] under this contract ... for a period during which he is entitled to workers' compensation benefits ... will be deemed an advance payment of workers' compensation benefits due [Green], and [the Saints] will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation." The $38,210.88 represents "compensation paid to [Green] under this contract ... for a period during which he is entitled to workers' compensation benefits." Under paragraph 10, the Saints are entitled to be reimbursed the amount of such payment, $38,210.88. The time period reflected in paragraph 10 merely categorizes payments made during that time period as an advance of workers' compensation benefits; it does not limit the employer to an offset against workers' compensation awards for the specified period of time during which the player was *1204 still under contract.[7] If this provision was intended to limit the offset for a period of time, the last line of the provision would not have so clearly said otherwise.

CONCLUSION
The Louisiana Legislature created a dollar-for-dollar credit for payments made to a professional athlete as specified under La. R.S. 23:1225(D). Paragraph 10 of the Contract does not provide a contractual right greater than this statutory dollar-for-dollar offset. Accordingly, the Saints are entitled to a dollar-for-dollar credit for the $38,210.88 paid to Green pursuant to the "Agreement and Release" and they are not obligated to pay weekly indemnity benefits until the $838,210.88 is exhausted. To the extent that Ricketts holds otherwise, it is overruled. Finally, if not already accomplished by the court of appeal's somewhat inconsistent judgment, we remand the case to the workers' compensation judge to determine Green's entitlement to workers' compensation benefits.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and the case is remanded to the workers' compensation judge for further proceedings.
REVERSED AND REMANDED.
CALOGERO, C.J., concurs and assigns reasons.
JOHNSON, J., dissents.
CALOGERO, Chief Justice, concurring.
I agree with Justice Victory's critical analysis of paragraph 10 of the contract in question here when he finds:
[T]he language of paragraph 10 of the contract is in fact consistent with the language of La. R.S. 23:1225(D). Under paragraph 10, "[a]ny compensation paid to [Green] under this contract ... for a period during which he is entitled to workers' compensation benefits ... will be deemed an advance payment of workers' compensation benefits due [Green], and [the Saints] will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation." The $38,210.88 represents "compensation paid to [Green] under this contract ... for a period during which he is entitled to workers' compensation benefits." Under paragraph 10, the *1205 Saints are entitled to be reimbursed the amount of such payment, $38,210.88. The time period reflected in paragraph 10 merely categorizes payments made during that time period as an advance of workers' compensation benefits; it does not limit the employer to an offset against workers' compensation awards for the specified period of time during which the player was still under contract.
The contrary view that the period of time referred to in paragraph 10 in some way limits the Saints' rights to only a week-for-week offset during the term of the contract is simply unsupported by the language of paragraph 10. I also agree with the majority's blessing of the First Circuit's treatment of this issue in Dombrowski v. New Orleans Saints, 99-0008 (La.App. 1 Cir. 3/31/00), 764 So.2d 980, and its disagreement with the Fourth Circuit's decision in Ricketts v. New Orleans Saints, 96-0760 (La.App. 4 Cir. 12/4/96), 684 So.2d 1050, writ denied, 97-0020 (La. 3/7/97), 689 So.2d 1373 (Calogero, C.J., and Knoll, J., to grant).
I am concurring to express the view that although § 1225(D) seemingly provides the Saints with a dollar-for-dollar offset of "any compensation" paid to Green at any time, I would not interpret the statute so as to apply it to an offset against pre-injury earnings. To do so, in my view, would violate the public policy of the state as well as the fundamental goals of the Workers' Compensation Act because an interpretation which permits an offset against pre-injury earnings would allow the Saints to avoid a workers' compensation obligation altogether in some situations. For example, a Player who plays for the Saints for a number of years under a lucrative contract would "build up" such a credit against a future workers' compensation award that the prospect of any recovery is minimal or nonexistent following an injury. In such a situation, a Player with permanent and total disability, for instance, would not be able to recover any workers' compensation award for that injury because of significantly large past earnings being applied as an offset to a workers' compensation award.
Here, however, the Saints are only seeking to offset post-injury earnings against the workers' compensation otherwise due Green.[1] Therefore, as the application of § 1225(D) to pre-injury earnings is not raised in this case, I agree with the majority's conclusion that the New Orleans Saints are entitled to a dollar-for-dollar offset of the $38,210.88 post-injury earnings against the workers' compensation award to which Green is due.
NOTES
[1] The parties stipulated that the injury was sustained within the course and scope of Green's employment. The parties also stipulated that the surgery occurred on August, 3, 1997; however, the record reflects that the surgery was on August 20, 1997.
[2] This amount was based on Green's claim that his average weekly salary was $3,769.23.
[3] It is unclear from the language of the Judgment what type of workers' compensation benefits the $341.00 represented. This uncertainty is manifested in the parties' appeals to the court of appeal, with Green assigning as error the trial judge's failure to award supplemental earnings benefits, and with the Saints assigning as error the trial judge's award of SEB's after the six week offset period.
[4] The first paragraph of the opinion states: "we affirm the decision of the trial judge awarding a week-for-week offset, and we remand the matter for further proceedings." At the end of the opinion, the court of appeal noted that the parties had assigned additional errors in their appeals, namely, the Saints argument that the trial judge erred in awarding continued workers' compensation benefits to Green after the expiration of the six week period, and Green's argument that the trial court erred in failing to find that the Saints had acted arbitrarily and capriciously and in failing to award SEB's. The court of appeal then held:

The parties stipulated that Mr. Green had been injured and had not returned to professional football. This case was submitted to the worker's compensation judge on briefs only, and therefore no additional evidence on these issues was presented to the trial judge. Based on the record before us, and with no additional evidence related to these issues, we cannot say that the worker's compensation judge erred in her determination of benefits. Accordingly, we affirm the decision of the worker's compensation judge. All costs are assessed against defendant/appellant, the New Orleans Saints. AFFIRMED
Thus, in the first paragraph of the opinion, the court appeal appears to remand all issues except the offset issue, including Green's entitlement to SEB's, to the trial judge. However, in the last paragraph, the court affirms the entire judgment. At oral argument, the parties represented to the court that the issue of Green's entitlement to SEB's had been remanded to the trial judge.
[5] The parties were also governed by a Collective Bargaining Agreement, which contained the following provisions regarding workers' compensation:

Article LIV Workers' Compensation
Section 1. Benefits. In any state where workers' compensation coverage is not compulsory, a Club will either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players. In the event that a player qualifies for benefits under this section, such benefits will be equivalent to those benefits paid under the compensation law of the state in which his Club is located.
. . .
Section 6. Preservation of Rights. The NFLPA and the Clubs preserve their prior positions with regard to the legality of workers' compensation offset provisions under state law, and nothing in this Article shall prevent any player from claiming that an offset provision is not legally binding upon him or prevent any Club from asserting that an offset provision is legally binding upon a player. In addition, neither party nor members of the NFLPA's bargaining unit will claim that the other party's agreement to this Article or the revised NFL Player Contract appended hereto affects the rights set forth above.
[6] In Ricketts, just as here, the sole issue presented was whether under the NFL Contract and La. R.S. 23:1225(D), the Saints were entitled to a dollar-for-dollar offset of the full amount paid under the Agreement and Release, or only for an offset for the three weeks paid under the settlement agreement.
[7] Although not argued in briefs to this Court, Green argued at oral argument before this Court that the Saints are not entitled to an offset at all because there were two injuries, a hernia injury and a knee injury, that the injury settlement of $38,210.88 was for the hernia injury, and that the workers' compensation judge ordered workers' compensation benefits only for the knee injury. Therefore, he argues, the hernia injury settlement cannot be offset against the knee injury workers' compensation benefits. Although the "Agreement and Release" entered into between Green and the Saints mentions only the hernia injury, it releases the Saints from "any and all claims arising from or related to [his] employment by the (Club), or any medical care incident to such employment," not just claims relating to the injury mentioned, i.e., the inguinal hernia. Further, the language of La. R.S. 23:1225(D) is very broad, entitling the employer to an offset against compensation benefits for "any grievance or settlement pay" and "any other payment made to the professional athlete by the employer pursuant to any contract or agreement whatsoever." La. R.S. 23:1225(D)(7)(9). There is no requirement in Paragraph 10 of the Contract or in the statute that the payment made to the player be for an injury at all (or for a particular injury or for one injury and not another). The intent of both the statute and Paragraph 10 is that when any payment is made to the player and he is thereafter found to have been entitled to workers' compensation when the payment was made, the payor gets a dollar for dollar credit for the entire payment against all future compensation benefits.
[1] The $38,210.88 is post-injury earnings because, under paragraph 9 of the contract, the Saints were required to continue to pay Green his weekly paycheck of roughly $6,200 throughout the six weeks needed to recover from the injury.