880 So.2d 105 (2004)
Don MOSELEY, Jr., Plaintiff-Appellant
v.
Harold S. MUSTIN, Jr., Defendant-Appellee.
No. 38,455-CA.
Court of Appeal of Louisiana, Second Circuit.
July 28, 2004.
*106 Jeffrey L. Little, Shreveport, for Appellant.
Aubrey R. Snell, for Appellee.
*107 Before BROWN, WILLIAMS and CARAWAY, JJ.
WILLIAMS, Judge.
This case involves a dispute over the split of commissions earned from the sale of New York Life Insurance Company ("New York Life") products. The plaintiff, Donald Moseley, Jr., filed suit against defendant, Harold Mustin, Jr., based on a December 1998 contract governing commission splits between the parties allegedly earned while they were working at New York Life. Plaintiff appeals the trial court's judgment in favor of the defendant, dismissing the plaintiff's claims. For the following reasons, we affirm.

FACTS
The plaintiff and the defendant were insurance agents for New York Life. Both parties testified that the defendant was much more experienced than the plaintiff as an insurance agent. The defendant and the plaintiff worked together on various files and shared some commissions on a 50/50 basis. The two men worked together for approximately two years before a disagreement arose between them in April 1998. The defendant testified that the disagreement began when the plaintiff informed him that he would be assisting another New York Life agent, who was one of the defendant's competitors within the company. The defendant testified at trial that immediately after he learned of the plaintiff's intentions, he met with the plaintiff at a local restaurant to discuss the apparent business conflict, but they could not agree on a solution. The defendant terminated their working relationship at that time, but they continued to share commissions on clients they had previously established together.
In the latter part of 1998, the plaintiff approached the defendant with a proposed agreement consisting of seven paragraphs that he drafted to govern future commission splits between the two of them. The defendant refused to sign this original draft. Based on the defendant's objections to some of the contents, the contract was revised and signed by both parties on November 30, 1998. The revised contract retained the terms and language used in the first two paragraphs of plaintiff's original draft. After a typographical error was discovered in this document, a corrected contract was signed by both parties on December 2, 1998. This final contract provided that the parties would split on a 50/50% basis future commissions earned from current joint clients, as well as any commissions earned from a project pending at Beaird Industries ("Beaird") to implement a payroll deduction/group benefits plan and a transfer of the union 401(k) pension fund.
Subsequently, the plaintiff complained that defendant had breached the written agreement by failing to pay plaintiff his share of commissions for certain policies sold both before and after the date of the contract. The plaintiff filed a petition for damages against the defendant, seeking an accounting and payment of sums allegedly due under the contract. The petition also claimed that defendant had made misrepresentations in obtaining the contract by not disclosing that he owed money to plaintiff for policies sold prior to the contract.
After a trial, the district court issued written reasons for judgment finding that the December 1998 contract governed the business arrangement between the parties as of the date of signing and that the defendant did not owe any money to plaintiff on any of his claims. The trial court rendered judgment dismissing plaintiff's claims. Plaintiff appeals the judgment.

*108 DISCUSSION
In several assignments of error, the plaintiff contends the trial court erred in finding that defendant did not owe any additional commission payments. Plaintiff argues that his right to one-half of the commissions from some pre-December 1998 policies is demonstrated by the parties' past practices and by the contract, which reflected such "past dealings."
Legal agreements have the effect of law upon the parties and the courts are bound to give legal effect to all such contracts according to the true intent of the parties. Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982). A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. In order to reverse a factfinder's determination, the reviewing court must review the record in its entirety and meet the following two-part test: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. McDuffie v. Riverwood International Corporation, 27,292 (La.App.2d Cir.8/23/95), 660 So.2d 158.
Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. Such intent is to be determined in accordance with the plain, ordinary and popular sense of the language used, and by construing the entirety of the document on a practical, reasonable and fair basis. McDuffie, supra; Lindsey v. Poole, 579 So.2d 1145 (La.App. 2d Cir.1991), writ denied, 588 So.2d 100 (La.1991). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; Green v. New Orleans Saints, XXXX-XXXX (La.11/13/00), 781 So.2d 1199. Words of a contract must be given their generally prevailing meaning. LSA-C.C. art. 2047; Diefenthal v. Longue Vue Management Corp., 561 So.2d 44 (La.1990). In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. LSA-C.C. art. 2056; Harris v. Housing Authority of the City of Mansfield, La., 27,771 (La.App.2d Cir.12/6/95), 665 So.2d 712.
The plaintiff's petition alleges that the December 1998 contract was meant to "memorialize the past dealings of the parties with regard to commissions derived from joint clients." However, the contract specifically states that it covers future commissions and does not allocate commissions earned prior to the contract date.
Nor does the record support plaintiff's apparent argument that the parties' prior pattern of practice established an unwritten agreement giving him the right to 50% of the commissions on some pre-December 1998 policies. There was conflicting testimony regarding such an arrangement. The defendant testified that before December 1998, the parties shared commissions on a case-by-case basis and that they did not have a general agreement or formula with regard to the split of commissions. In addition, defendant stated that any prior working relationship with the plaintiff was over at the time the contract was signed and that the written agreement concerned solely their practice in the future.
The plaintiff testified that the parties did not end their working relationship, but *109 continued forward with joint business in which the contract was one step in the process. Plaintiff acknowledged that the contract was meant to govern work with defendant for future commissions.
The record supports a finding that any business arrangement between the parties with respect to new clients had ended in April 1998. Considering the language of the contract and the evidence presented, we cannot say the trial court was clearly wrong in finding that the contract did not govern any policies or commissions generated prior to December 1998 and that defendant did not owe plaintiff any additional payments for such pre-contract policy sales. The assignment of error lacks merit.
The plaintiff contends the trial court erred in its interpretation of the term "client" in the contract. Plaintiff argues that he is entitled to an additional 25% of the commissions earned from the sale of insurance products to Pam Wingfield and Horace Wingfield, Jr. and 50% of the commission earned from the sale of products to Debra Best, G.O. Consultants, Inc., Horace Wingfield, Sr., Marilyn Wyman and Beaird employees and several of their spouses. After reviewing the record, we find that the evidence does not support plaintiff's contentions.
The record shows that initially the plaintiff drafted a much more detailed contract providing him with the right to 50% of the commission on sales made to immediate family members of "current joint clients" and/or Beaird employees, any additional personal business and any referrals resulting from the group contact of Beaird employees. The defendant testified that he did not agree with the provisions in this draft and refused to sign. Testimony of both the plaintiff and defendant show that revisions were made to the contract. Both claim that the other was responsible for the revisions. However, paragraphs one and two of the December 2, 1998 contract are almost exact excerpts from the original draft written by the plaintiff. The contract provides in pertinent part:
1. All future commissions derived from the sale of products/services to current joint clients * will be split 50%-50% between the below undersigned.
2. All future commissions derived from the Beaird Industries payroll deduction/group benefits including the proposed 401(k) union transfers will be split 50%-50%.
* Current joint clients refers to clients in which Don Moseley, Jr. was paid 50% and Harold S. Mustin, Jr. was paid 50%.
A review of the December 2, 1998 contract along with the initial draft supports the trial court's conclusion that the plaintiff's language and terms were used in the final contract. When interpreted in accordance with the appropriate Civil Code articles, we find the contract between the plaintiff and the defendant is substantially clear and unambiguous. The much broader provisions in the initial draft were specifically excluded from the final contract, which defines current joint clients as those who previously paid the parties a commission on a 50/50 basis.
The plaintiff also argues that the word "derived," as used in the contract, should be interpreted to cover all of the situations that were included in the initial contract draft. However, during trial, expert witness Scott McGuire testified that he had not heard the word "derived" used as an insurance industry term. He further testified that in his dealings with other agents he always makes sure that "spin-offs," "leads" or "referrals" are included in the agreement. These are the terms commonly used in the industry and refer to prospects. According to McGuire, a prospect *110 is someone who has not yet purchased insurance. The contract signed by the parties did not include prospects in the definition of "current joint clients." The plaintiff testified that he was familiar with the terms "spin-offs," "leads" and "referrals" but chose not to use them in the December 2, 1998 contract. Based on the evidence presented, we cannot agree with the plaintiff that the word "derived" can be used to extend the contract's definition of joint clients to include prospects or potential clients. We now examine the trial court's ruling on each of the sales at issue.
Debra BestMs. Best is the daughter of Leo Brown and Margaret Brown, "current joint clients" of the parties. Although the record shows that commissions were split 50/50 from policy sales to Leo Brown and Margaret Brown, Best is not a "current joint client" as defined in the December 1998 contract. Furthermore, this policy was sold in October 1998, prior to the date of the contract. Thus, there was a reasonable factual basis for the trial court's denial of this claim.
O.J. RomeroMr. Romero was a "current joint client," however, this policy was sold to G.O. Consultants in 1999. Based on the contract's definition of "current joint client," G.O. Consultants was not a joint client, since it had never paid for a prior policy. Thus, the plaintiff is not owed any commission and the trial court's denial of this claim was reasonable.
Horace Wingfield, Sr.This mutual fund was sold in May 1998. The trial court was correct in denying the claim based on the fact that this sale predates the December 2, 1998 contract. In addition, Mr. Wingfield, Sr. had not previously paid the parties a commission and was not a "current joint client" under the contract.
Pam Wingfield and Horace Wingfield, Jr.Horace Wingfield and Pam Wingfield were "current joint clients," since they had previously paid the parties commissions on a 50/50 basis. The defendant testified that he signed the plaintiff's name on the paperwork indicating the commission split at 75% for himself and 25% for the plaintiff. He stated the plaintiff knew about and approved the commission change. Testimony from plaintiff and other witnesses revealed that the plaintiff received ledgers, books of business and other New York Life insurance documents that should have placed him on notice about the change in the commission splits. Plaintiff states that he did not immediately challenge these changes because he failed to review his paperwork thoroughly enough to discover the revised commission splits. However, the defendant testified that the office manager would have contacted plaintiff for his approval of the change in the commission splits. Although the trial court did not specifically address this issue, the evidence supports denial of this claim.
Marilyn WymanThis sale occurred in June 1998 and predates the December 2, 1998 contract. Furthermore, Wyman was not a "current joint client" of the parties, as defined in the contract. A reasonable factual basis exists for the denial of this claim.
Union Transfers (Beaird Industries) Both the plaintiff and the defendant testified that their efforts to transfer management of the union's 401(k) pension fund and to establish a payroll deduction life insurance plan for Beaird employees were not successful. The defendant later sold individual insurance policies to non-union employees of Beaird. The record shows that plaintiff did not assist the defendant in making these sales. The defendant testified that he invited plaintiff to participate in sales presentations but he declined. The plaintiff could not positively state that he had personally met anyone who purchased insurance from defendant at *111 Beaird. Plaintiff acknowledged that he did not write the applications or deliver the policies to any of the individuals at issue.
Nevertheless, plaintiff contends he is entitled to one-half of the commissions received by defendant for those individual polices. However, plaintiff's attempt in his initial draft to include such personal policies in a broader definition of Beaird clients was not accepted by defendant. Consequently, a reasonable interpretation of the parties' intent is that the contract applied only to commissions which would be obtained from the proposed transfer of the union 401(k) pension fund or from an employee group plan with payroll deduction payments. Thus, the trial court correctly denied this claim. The assignment of error lacks merit.
The plaintiff contends he is entitled to attorney fees due to the defendant's alleged misrepresentations in failing to disclose commissions owed and in signing plaintiff's name on insurance applications without authority. The witness testimony demonstrated that New York Life insurance agents affixed another agent's name to insurance applications in situations when they were working together and there was a high volume of business. Both plaintiff and defendant acknowledged affixing the other's name to policy applications under such circumstances. In light of our decision affirming the trial court's finding that defendant did not owe any additional commission payments, the plaintiff has failed to show any misrepresentation by the defendant to entice him to enter into the contract. Thus, the assignment of error lacks merit.

Frivolous Appeal
The defendant has answered the appeal alleging that plaintiff has filed a frivolous appeal and seeking an award of damages and attorney fees. He contends this appeal does not present a substantial legal question for our review.
Appeals are favored and appellate courts are therefore reluctant to impose damages for frivolous appeal. Harris v. Gaylord Bag Company, 26,335 (La. App.2d Cir.12/7/94), 647 So.2d 542, writ denied, 95-0051 (La.3/17/95), 651 So.2d 268. LSA-C.C.P. art. 2164 provides for the imposition of damages for frivolous appeals. This provision is penal in nature and must be strictly construed. Harris, supra. Damages will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, serious legal questions are not raised, or the appellate counsel does not seriously believe in the position he advocates. Even when the contentions on appeal are found to lack merit but raise legitimate issues, damages for a frivolous appeal are not allowed. Thomas v. Gould Street Logging, 27,192 (La.App.2d Cir.9/27/95), 661 So.2d 546; Fontenot v. Flaire, Inc., 26,055 (La.App.2d Cir.8/17/94), 641 So.2d 1062.
Here, plaintiff's counsel submitted an appellate brief with citations of authority and references to the record in support of his position on appeal. There is no showing that the appeal was taken solely for delay or that counsel did not believe in the position he advocated. Thus, an award of damages for frivolous appeal is not warranted.

CONCLUSION
For the foregoing reasons, the trial court's judgment dismissing the plaintiff's claims is affirmed. Frivolous appeal damages are denied. Costs of this appeal are assessed to the plaintiff, Donald Moseley, Jr.
*112 AFFIRMED; FRIVOLOUS APPEAL DAMAGES DENIED.