943 So.2d 403 (2006)
James Matthew DOMBROWSKI
v.
NEW ORLEANS SAINTS.
No. 2005 CA 0762.
Court of Appeal of Louisiana, First Circuit.
August 2, 2006.
*405 Robert L. Hackett, Atlanta, GA, for Plaintiff-Appellee James Matthew Dombrowski.
Michael H. Rubin, Emily B. Grey, Juston M. O'Brien, McGlinchey Stafford, PLLC, David K. Johnson, Johnson, Stiltner, and Rahman, Baton Rouge, for Defendants-Appellants New Orleans Saints and Louisiana Workers Compensation Corporation.
Before: PARRO, McDONALD, and HUGHES, JJ.
PARRO, J.
An employer and its workers' compensation insurer appeal from a judgment by the Office of Workers' Compensation Administration (OWC)[1] in favor of its employee, ordering the insurer to pay workers' compensation benefits, penalties, attorney fees, and costs. For the following reasons, we reverse.

Facts and Procedural History
In 1996, James M. Dombrowski (Dombrowski) signed a standard National Football League (NFL) Player Contract (Player Contract) to play football for the New Orleans Saints for the 1996 season. The Player Contract is a standard contract developed pursuant to a "Collective Bargaining Agreement" (CB agreement) between the NFL Management Council and the NFL Players Association. The CB agreement had been executed on May 6, 1993, and had been amended on June 6, 1996.[2] On November 17, 1996, Dombrowski was injured during a football game and did not play during the 1997 season.
In connection with a disputed claim filed with the OWC by Dombrowski in October 1997 concerning his 1996 injury, the parties made the following stipulations. Dombrowski received his last check for the 1996 season on January 8, 1997. He did not play during the 1997 season, but pursuant to an injury protection provision contained in the CB agreement, he received $200,000 as wages in 16 weekly payments over the course of the 1997 season. He began receiving weekly compensation benefits *406 in the amount of $341 beginning on December 22, 1997, at the conclusion of the 1997 playing season. The only issue remaining for the workers' compensation judge (WCJ) to decide in connection with Dombrowski's 1997 claim was whether the Saints were entitled to a week-for-week, as opposed to a dollar-for-dollar, credit for the $200,000 paid to Dombrowski. Relying on LSA-R.S. 23:1225(D) as it existed on the date that the Player Contract was entered into by Dombrowski and on the date of his injury, the WCJ determined that the statutory dollar-for-dollar credit was applicable. Workers' compensation benefits being paid to Dombrowski were terminated on September 29, 1998.
Dombrowski appealed, urging that the WCJ erred in finding that the Saints were entitled to a dollar-for-dollar credit against the workers' compensation benefits payable to him. Dombrowski v. New Orleans Saints, 99-0008 (La.App. 1st Cir.3/31/00), 764 So.2d 980. On appeal, this court found that the terms of the Player Contract were clear and explicit and did not amount to a waiver of the statutory dollar-for-dollar offset set forth in LSA-R.S. 23:1225(D). The Player Contract was found to have clearly established that when compensation is paid to a player, the club was entitled to reimbursement in the amount of the payment made to the player. Thus, the contractual provision did not in any way alter the rights guaranteed by LSA-R.S. 23:1225(D). Dombrowski, 764 So.2d at 983. The supreme court denied Dombrowski's application for a writ of certiorari, citing Green v. New Orleans Saints, 00-0795 (La.11/13/00), 781 So.2d 1199. Dombrowski v. New Orleans Saints, 00-2103 (La.12/15/00), 777 So.2d 1226.
In March 2004, Dombrowski filed a second disputed claim with the OWC in connection with the injury that was at the heart of his 1997 claim, urging simply that the credit provided for in LSA-R.S. 23:1225(D) was inapplicable or had been depleted.[3] The Saints filed a combined answer and exception. Subsequently, the legislature repealed Section 1225(D). See 2004 La. Acts, No. 561, § 1, effective August 15, 2004.
After a trial of his 2004 claim on November 15, 2004, the WCJ held that: the 1993 enactment of Section 1225(D) constituted ex post facto legislation as applied to this case, because the CB agreement was in place one month prior to its enactment; the 2004 repeal of Section 1225(D) was curative, thus no specific statement of retroactivity was needed; and the CB agreement governed as though Section 1225(D) never existed. The resulting judgment provided that Dombrowski was entitled to supplemental earnings benefits (SEB) of $341 per week retroactive to the date of his 1996 injury, subject to a 16-week credit, with judicial interest accruing from the date of the filing of the first disputed claim, October 17, 1997. Dombrowski was also awarded certain medical expenses and mileage reimbursement, $8,000 in penalties and $20,000 in attorney fees for the Saints' arbitrary and capricious discontinuance of indemnity and medical benefits, and litigation costs pursuant to LSA-R.S. 23:1317(B). After the WCJ's denial of the Saints' motion for a new trial, the Saints and its insurer, Louisiana Workers Compensation Corporation, appealed. They urged that the WCJ erred in finding that the repeal of Section 1225(D) applied retroactively, in failing to find that the doctrine of res judicata barred this action in *407 light of this court's prior decision in Dombrowski, 764 So.2d 980, and in awarding attorney fees, penalties, interest, and costs.

Res Judicata
An exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant to retard, dismiss, or defeat the demand brought against him. LSA-C.C.P. art. 921. The function of a peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action. LSA-C.C.P. art. 923. All exceptions shall set forth the name and surname of the exceptor, state with particularity the objections urged and the grounds thereof, and contain a prayer for the relief sought. LSA-C.C.P. art. 924. The objection of res judicata may be raised through the peremptory exception. LSA-C.C.P. art. 927(A)(2). The court cannot supply the objection of res judicata, which must be specially pleaded. LSA-C.C.P. art. 927(B). The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision. LSA-C.C.P. art. 928(B). When pleaded before or in the answer, a peremptory exception shall be tried and decided in advance of the trial of the case. LSA-C.C.P. art. 929(A). On the trial of the peremptory exception pleaded prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. LSA-C.C.P. art. 931.
In its combined answer and exception, the Saints simply asserted that the issues set forth in the 2004 disputed claim were precluded by the doctrine of res judicata, without setting forth any grounds or supporting details. The record contains no memorandum by the Saints in support of its exception, nor was there any request to set the exception for hearing before trial. In its pretrial statement, the Saints again mentioned the issue of the doctrine of res judicata as a bar to Dombrowski's disputed 2004 claim. Although counsel for Dombrowski informed the WCJ at the trial that this matter had been previously tried, the Saints did not directly explore or develop the issue of res judicata at the trial or in its post-trial memorandum. Furthermore, the WCJ neither considered nor ruled on the exception prior to trial or prior to rendering judgment on the merits. Having failed to urge that the objection of res judicata be heard or judgment rendered by the OWC, we conclude that the Saints waived or abandoned the exception that was filed with the OWC. See Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399, 407 (1965); Louisiana Power & Light Co. v. City of Houma, 229 So.2d 202, 204 (La.App. 1st Cir.), writ denied, 254 La. 1165, 229 So.2d 350 (1969); LeBlanc v. Breaux, 00-897 (La.App. 5th Cir.12/13/00), 777 So.2d 532, 540-41, writ denied, 01-0120 (La.3/23/01), 788 So.2d 428; The Research Group, Inc. v. Sharp, 430 So.2d 165, 168 (La.App. 2nd Cir.1983). Thus, the WCJ did not err in failing to rule on the exception. The Saints did not file an exception raising the objection of res judicata with this court, and this court cannot supply this exception.[4] Accordingly, the preclusive effect, if any, of the rulings embodied *408 in Dombrowski, 764 So.2d 980, will not be considered in this appeal,[5] except insofar as this court owes deference to its prior conclusions of law.

Applicability of LSA-R.S. 23:1225(D)
The Saints argued that the WCJ erred in holding that the repeal of LSA-R.S. 23:1225(D) retroactively changed the legal impact of the law that was in effect on the date that Dombrowski's 1996 Player Contract was signed and the date that the injury occurred. Prior to its repeal by Act 561 of 2004, LSA-R.S. 23:1225(D) provided:
The compensation benefits payable to a professional athlete under any provision of this Chapter shall be reduced or offset by an amount equal to the total amount of benefits, wages, or other type of payment mentioned in any part of this provision on a dollar-for-dollar basis and not just on a week-to-week basis, if a professional athlete receives payment or remuneration from any of the following or payment of any type from any of the following:
(1) Any wages or benefits payable or paid to the athlete.
(2) A collective bargaining agreement.
(3) A contract of hire of any type.
(4) Any type of severance pay.
(5) Any type of injured reserve pay.
(6) Any type of termination pay.
(7) Any grievance or settlement pay.
(8) Any workers' compensation benefit of any type.
(9) Any other payment made to the professional athlete by the employer pursuant to any contract or agreement whatsoever.
The WCJ held that the 2004 repeal of Section 1225(D) was curative, thus no specific statement of retroactivity was needed and, therefore, the CB agreement governed as though Section 1225(D) had never existed. The legislative history indicates the contrary, in that it reflects that the legislature considered and expressly rejected the thought of making the repeal of Section 1225(D) retroactive. Further, like the court in Hughes v. New Orleans Saints, 05-712 (La.App. 5th Cir.2/27/06), 924 So.2d 1086, 1090, writ denied, 06-1008 (La.6/23/06), 930 So.2d 980, we do not agree that this repeal was "curative" and, thus, automatically retroactive.
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary. LSA-C.C. art. 6. If an expression of retroactive application of a substantive law is provided, such is possible only to the extent that it is constitutionally permissible. LSA-C.C. art. 6, revision comment (b). There is no reference to so-called remedial or curative legislation in Article 6 because of the multiplicity of meanings assigned to it. A remedial law may be procedural, interpretative, or substantive. A procedural law is remedial in the sense of dealing with the remedy rather than with the right itself. An interpretative law is remedial in the sense of remedying an error or ambiguity in the prior law. In both situations the new law may, in principle, apply retroactively even in the absence of express language to that effect. However, a substantive law may also be, and often is, called remedial when it remedies an existing social problem resulting from a gap, silence, or deficiency of the prior law. In such a situation, the new law should not be applied retroactively, absent a contrary and constitutionally permissible legislative directive. *409 See LSA-C.C. art. 6, revision comment (d). Undoubtedly, Section 1225(D) created substantive rights in favor of the Saints. Thus, the repeal of that statute involves substantive rights; in the absence of a contrary and constitutionally permissible legislative directive in Act 561, we conclude that the repeal cannot be applied retroactively. The WCJ erred as a matter of law in ruling to the contrary.[6]See Hughes, 924 So.2d at 1090.
Alternatively, Dombrowski argued and the WCJ found that the 1993 enactment of Section 1225(D) was ex post facto legislation, since the original CB agreement was in place one month prior to the enactment of this statutory provision. This ruling was made without mention and seemingly without consideration of the Player Contract between the player and the Saints on which the decisions in Dombrowski and Green were based. Furthermore, consideration was seemingly not given to the fact that the 1993 CB agreement had been amended in 1996 and in 1998. Notably, only the 1998 version of the CB agreement was offered into evidence.
Laws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written therein. Board of Comm'rs of Orleans Levee Dist. v. Department of Natural Res., 496 So.2d 281, 294 (La.1986). Under the facts of this case, Dombrowski and the Saints were governed by the CB agreement that was executed on May 6, 1993, and amended on June 6, 1996, and the Player Contract that was executed in 1996. The CB agreement, in pertinent part, provided:[7]
Article LIV
Workers' Compensation
Section 1. Benefits: In any state where workers' compensation coverage is not compulsory, a Club will either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players. In the event that a player qualifies for benefits under this section, such benefits will be equivalent to those benefits paid under the compensation law of the state in which his Club is located.
* * *
Section 6. Preservation of Rights: The NFLPA and the Clubs preserve their prior positions with regard to the legality of workers' compensation offset provisions under state law, and nothing in this Article shall prevent any player from claiming that an offset provision is not legally binding upon him or prevent any Club from asserting that an offset provision is legally binding upon a player. In addition, neither party nor members of the NFLPA's bargaining unit will claim that the other party's agreement to this Article or the revised NFL Player Contract appended hereto affects the rights set forth above.
The Player Contract was prepared by the NFL and the NFL Players Association and is the standard contract used by all teams in the NFL. Paragraph 10 of the Player Contract provided:
WORKERS' COMPENSATION. Any compensation paid to Player under *410 this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation.
See Collective Bargaining Agreement, Appendix C, pp. 232-33.
The CB agreement states that workers' compensation matters will be determined according to the law of the state in which the player's football club is located and that both parties have the right to contest offset issues. The Player Contract provides that any compensation paid to the player, either under the contract or under the CB agreement, during a period in which he would be entitled to workers' compensation benefits, will be deemed an advance payment of workers' compensation benefits due, and the club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation. See Jerich v. New Orleans Saints, 00-1299 (La.App. 5th Cir.12/27/00), 776 So.2d 1283, 1287 n. 1. Since LSA-R.S. 23:1225(D) was in effect when Dombrowski entered into the Player Contract with the Saints and at the time of his injury,[8] Section 1225(D) is applicable to his 2004 claim unless he and the Saints had expressed a clear intention to modify the Saints' statutory right to take a dollar-for-dollar credit for the advance payments of workers' compensation benefits to Dombrowski.
After examining the content of these contractual provisions, the supreme court in Green, 781 So.2d 1199,[9] found that paragraph 10 of the Player Contract was clear and explicit and did not amount to a waiver of the statutory dollar-for-dollar offset set forth in LSA-R.S. 23:1225(D). Although the claimant in that case asserted that paragraph 10 of the Player Contract provided the player with greater rights than those afforded by LSA-R.S. 23:1225(D), the supreme court found that it did not. The language of paragraph 10 of the Player Contract was held to be consistent with the language of Section 1225(D). Green, 781 So.2d at 1203.
Dombrowski was subject to the same CB agreement, and the wording of the pertinent provision in his Player Contract was identical to that in Green. Accordingly, the decision in Green governs here. The fact that the CB agreement was originally executed prior to the enactment of LSA-R.S. 23:1225(D) has never before precluded the application of this *411 statute to claims by NFL players who entered Player Contracts and suffered injuries after the effective date of the enactment of the statute. The date of the signing of the Player Contract and the date of the injury have been pivotal in determining the law applicable to the case. See Green, 781 So.2d at 1203; Hughes, 924 So.2d at 1091; Dombrowski, 764 So.2d at 983; and Jerich, 776 So.2d at 1283. Furthermore, the CB agreement was amended after the enactment of Section 1225(D). Therefore, we conclude that Section 1225(D) never had an ex post facto effect as applied to Dombrowski.
The $200,000 represents compensation paid to Dombrowski under the CB agreement. Pursuant to paragraph 10 of the Player Contract and LSA-R.S. 23:1225(D), the Saints are entitled to a dollar-for-dollar credit for $200,000 against workers' compensation benefits payable to Dombrowski under any provision of the workers' compensation law. The WCJ erred as a matter of law in failing to recognize a dollar-for-dollar credit in favor of the Saints. Accordingly, the Saints are not obligated to pay workers' compensation benefits to Dombrowski until its credit has been exhausted.

Entitlement to Benefits
The WCJ awarded SEB, medical expenses, and mileage reimbursement to Dombrowski based on her finding that the dollar-for-dollar offset provided for in LSA-R.S. 23:1225(D) was inapplicable in this case. In light of the legal error made with respect to this determination, the Saints were only given credit for the 16-week period during which Dombrowski received payments toward the $200,000. Upon the expiration of the 16-week period, the credit was considered by the WCJ as having been exhausted, thus entitling Dombrowski to workers' compensation benefits. Accordingly, the WCJ did not consider whether a dollar-for-dollar credit would have been exhausted by the time Dombrowski filed his disputed claim in 2004.
In his brief, Dombrowski urged that the Saints had paid for some, but not all, of his medical treatment. Based on the evidence presented, the WCJ found that Dombrowski had shown that he was entitled to reimbursement for $2,360.43 for medical expenses and for $781.76 in mileage for four round trips from Mandeville, Louisiana, to Houston, Texas. These specific findings have not been assigned as error by the Saints, nor has Dombrowski challenged these findings by way of an appeal or an answer to the Saints' appeal. As unpaid workers' compensation benefits to which Dombrowski was entitled, these figures would be applied as a reduction to the Saints' credit, along with the indemnity benefits that would have otherwise been due since the date of his injury, excepting indemnity benefits to which he would have been entitled for the period of December 22, 1997, through September 29, 1998, which were actually paid by the Saints.[10]
Considering these facts and the fact that approximately eight years or 416 weeks had passed between Dombrowski's injury and the trial of this matter, we conclude that Dombrowski failed to prove that the Saints' dollar-for-dollar credit had been exhausted so as to entitle him to workers' compensation benefits. Therefore, the WCJ judge erred in awarding workers' compensation benefits, including SEB, medical expenses, and mileage reimbursement. *412 For all of the foregoing reasons, we also find that the other awards in favor of Dombrowski were improper.

Decree
Therefore, the judgment of the Office of Workers' Compensation Administration is reversed. Costs of this appeal are assessed to James Matthew Dombrowski.
REVERSED.
NOTES
[1] The workers' compensation judge in this matter was Elizabeth A. Warren of District 6.
[2] The CB agreement, as amended, was extended, with certain modifications, on February 25, 1998.
[3] The rest of the allegations in his 2004 disputed claim merely referenced the allegations made in his 1997 disputed claim.
[4] Since the Saints have not filed an exception of res judicata with this court, there is no need to determine if such a filing would be precluded in light of the waiver or abandonment of its previously filed exception. See LSA-C.C.P. art. 2163; Bergeron v. Houma Hosp. Corp. of Sisters of St. Joseph, 514 So.2d 1192, 1194-95 (La.App. 1st Cir.1987), writs denied, 517 So.2d 812 (La.1988).
[5] See Jackson v. Iberia Parish Gov't, 98-1810 (La.4/16/99), 732 So.2d 517, 519 n. 1.
[6] A court of appeal may not overturn a judgment of the WCJ absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Barber Bros. Contracting Co. v. Cuccia, 98-0675 (La.App. 1st Cir.4/1/99), 734 So.2d 820, 822, writ denied, 99-1258 (La.6/18/99), 745 So.2d 31.
[7] These provisions apparently were not modified by the 1996 or 1998 amendments.
[8] See Dombrowski, 764 So.2d at 983.
[9] The court in Green observed that the time period reflected in paragraph 10 of the Player Contract merely categorized payments made during that time period as an advance of workers' compensation benefits; it did not limit the employer to an offset against workers' compensation awards for the specified period of time during which the player was still under contract. If paragraph 10 had been intended to limit the offset for a period of time, the last line of the provision would not have so clearly stated otherwise. Green, 781 So.2d at 1203-04. Rather, the intent of Section 1225(D) and paragraph 10 is that when any payment is made to the player and he is thereafter found to have been entitled to workers' compensation when the payment was made, the compensation payor gets a dollar-for-dollar credit for the entire payment against all future compensation benefits. Green, 781 So.2d at 1204 n. 7. Accordingly, the football club was entitled to a dollar-for-dollar credit for the money paid to the player and the club was not obligated to pay weekly indemnity benefits until the sum was exhausted. Green, 781 So.2d at 1204.
[10] The credit applies to any compensation benefits payable under any provision of the workers' compensation law. See LSA-R.S. 23:1225(D); see also Player Contract, paragraph 10.