734 So.2d 820 (1999)
BARBER BROTHERS CONTRACTING COMPANY
v.
Donald R. CUCCIA.
No. 98 CA 0675.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
Writ Denied June 18, 1999.
*821 Nicholas Canaday, III, Baton Rouge, Counsel for plaintiff/appellant, Barber Brothers Contracting Co.
Albert A. Bensabat, III, Hammond, Counsel for defendant/appellee, Donald R. Cuccia.
Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
WHIPPLE, J.
This is an appeal by plaintiff, Barber Brothers Contracting Company ("Barber Brothers"), from a judgment ordering it to pay defendant, Donald R. Cuccia, workers' compensation benefits. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On December 7, 1995, Cuccia injured his left knee while in the course and scope of his employment as an equipment operator and pipe layer for Barber Brothers. Following the accident, Cuccia was treated by Dr. J.L. Fambrough, an orthopedic surgeon, who performed arthroscopic surgery on January 25, 1996.
On December 4, 1996, Barber Brothers filed a disputed claim for compensation, seeking a declaration that it was not responsible for any further workers' compensation benefits to Cuccia and that Cuccia was not entitled to a change in treating physicians. Cuccia reconvened, seeking permanent partial disability benefits for a scheduled loss pursuant to LSA-R.S. 23:1221(4) and for further medical treatment.
Following trial, the workers' compensation judge rendered judgment, finding that Cuccia was not entitled to a change in physicians, but ordering Barber Brothers to pay Cuccia $7,269.57 in permanent partial disability benefits for a scheduled loss to the claimant's left leg. From this judgment, Barber Brothers appeals.

CUCCIA'S ENTITLEMENT TO PERMANENT PARTIAL DISABILITY BENEFITS
Barber Brothers contends that the workers' compensation judge erred in *822 awarding Cuccia benefits for a permanent partial disability to the left leg. It contends that while Dr. Fambrough assigned a 35% permanent partial disability to his left leg, Cuccia failed to prove that the December 7. 1995 work accident and resulting surgery caused or contributed to his disability, rather than an earlier 1985 injury to his left knee.
Permanent partial disability benefits are addressed in LSA-R.S. 23:1221(4). This section provides scheduled compensation for anatomical loss of use or amputation of various body members at a percentage of previous weekly earnings for a specific number of weeks. To qualify for benefits for loss of use, the loss of physical function must be greater than 25% as established in the American Medical Association "Guides to the Evaluation of Permanent Impairment." LSA-R.S. 23:1221(4)(q). Thus, if the permanent disability to an employee's leg is greater than 25%, the employee is entitled to sixty-six and two-thirds percent of his pre-injury wages for 175 weeks multiplied by the percentage of disability to the leg. LSA-R.S. 23:1221(4)(h) and (o).
The law is well established that an employer takes an employee as it finds him. The fact that disease alone might have disabled the employee in its ordinary course of progress is not the inquiry. Employers do not "pay for every flare-up"; but they must compensate claimants who prove a disabling aggravation of prior, asymptomatic conditions as a result of an on-the-job injury. Duncan v. State, Department of Transportation and Development, 556 So.2d 881, 886-887 (La.App. 2nd Cir.1990)
A court of appeal may not overturn a judgment of the workers' compensation judge absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Before an appellate court may reverse a factual determination, such as a finding of disability, it must find from the record that a reasonable factual basis does not exist for the finding and that the record establishes that the finding is clearly wrong. See Kennedy v. Johnny F. Smith Trucking, 94-0618, p. 2 (La. App. 1st Cir.3/3/95); 652 So.2d 526, 528.
The record reveals that on March 14, 1985, Cuccia injured his left knee when hit by a car. As a result of that accident, Cuccia underwent reconstructive knee surgery in 1986, to repair ligament damage. Cuccia was off of work for approximately three years following the March 1985 knee injury, but subsequently was able to engage in heavy labor after recovering from the 1986 surgery. Moreover, although his left leg was atrophied, indicating that he favored it, Cuccia stated that he had not experienced any further problems with his left knee and had been able to perform his job duties without any problems. Importantly, Cuccia was not assigned any disability or impairment rating to his left leg following the 1985 knee injury and resulting surgery.
In contrast, as noted by the workers' compensation judge in his reasons for judgment, which we attach hereto as "Appendix A" and adopt as our own, Dr. Fambrough assigned Cuccia a 35% permanent partial impairment to the left leg following Cuccia's 1995 work injury and resulting arthroscopic surgery. When subsequently asked by Barber Brothers to break down this impairment rating between the 1985 and 1995 knee injuries, Dr. Fambrough opined that Cuccia's 1985 knee injury had predisposed him to the current injury, but felt that he could not delineate the portion of the impairment percentage attributable to the original and subsequent injuries. Plaintiff contends Cuccia can not establish his entitlement to benefits. We disagree.
On this basis, as noted by the workers' compensation judge, the record shows that Cuccia undisputedly was able to perform heavy duty work prior to the accident with Barber Brothers, and following the accident, he could not perform at the same level. In fact, Cuccia left his employment with Barber Brothers because of his inability *823 to perform his usual job duties, and he went through several jobs in the subsequent six-month period in an attempt to find employment which fit within his new physical limitations. On the record before us, we find no error in the conclusion that Cuccia had sustained an employment related injury for which scheduled loss benefits were due by plaintiff as a result of the 1995 accident. We find no error by the workers' compensation judge in attributing Cuccia's permanent partial impairment to the 1995 work accident, based on the lay and medical testimony contained herein.
In particular, while Dr. Fambrough was unable to delineate the specific percentages of disability between the two injuries, he recognized that it was questionable whether any injuries or conditions attributable to the 1985 accident were functionally disabling. Indeed, as Dr. Fambrough noted, Cuccia "was apparently gainfully employed and aggravated this condition." Considering the record as a whole, we conclude that a reasonable factual basis exists in the record to support the workers' compensation judge's factual findings. Furthermore, those findings are not manifestly erroneous or clearly wrong and will not be overturned by this court.

ENTITLEMENT TO FUTURE MEDICAL BENEFITS
Barber Brothers further contends that the workers' compensation judge erred in failing to declare that Barber Brothers is not responsible for any of Cuccia's future medical needs. Barber Brothers asserts that Cuccia's work injury of December 7, 1995, has fully healed and that any future need for medical treatment would relate solely to Cuccia's 1985 knee injury.[1]
An injured employee is entitled to payment of medical expenses made necessary by a work-related accident. LSA-R.S. 23:1203(A); Prevost v. Jobbers Oil Transport Company, 95-0224, p. 6 (La. App. 1st Cir.10/6/95); 665 So.2d 400, 404, writ denied, 96-0440 (La.4/8/96); 671 So.2d 336. The question of whether the employee is entitled to medical benefits is ultimately a question of fact, and the trier of fact's resolution of that issue may not be disturbed in the absence of manifest error or unless clearly wrong. Starks v. Universal Life Insurance Company, 95-1003, p. 5 (La.App. 1st Cir.12/15/95); 666 So.2d 387, 391, writ denied, 96-0113 (La.3/8/96); 669 So.2d 400.
In support of its contention that it is not responsible for any further medical treatment of Cuccia, Barber Brothers avers that Dr. Fambrough related any continuing need for medical treatment exclusively to Cuccia's pre-existing degenerative condition of his left knee. Specifically, when questioned by Barber Brothers as to whether Cuccia was asymptomatic from the December 1995 injury at the time Dr. Fambrough released him to return to work *824 on April 12, 1996, Dr. Fambrough responded that he "would doubt" that Cuccia was asymptomatic. However, he "thought" that as of April 12, 1996, Cuccia's "symptomatology probably was comparable to what he had prior to his injury in December 1995."
Dr. Fambrough stated he further "felt" that even without the 1995 aggravation of his knee condition, there was an "excellent chance" that Cuccia would eventually need total knee arthroplasty in the future and that any future problems Cuccia may have, such as the need for additional surgery, would result from a continuation of the degenerative changes in his knee, secondary to his 1985 accident.
In evaluating the evidence of the record herein, we find it noteworthy that while Dr. Fambrough opined that even in the absence of the December 1995 aggravation, Cuccia would probably have needed total knee arthroplasty in the future, he concluded it was questionable whether the prior injuries were functionally disabling, and did not address whether the December 1995 aggravation accelerated the need for such surgery.
While Dr. Fambrough, who had not treated Cuccia prior to the December 1995 injury, was unable to delineate the exact percentages of impairment attributable to each accident, it is clear that he did attribute a permanent impairment to defendant's knee as a result of the work accident in question. Moreover, he stated that this impairment was due primarily to the pain Cuccia had been experiencing. We note that Dr. Fambrough never released Cuccia from his care with regard to the December 1995 injury.
Although Dr. Fambrough felt that as of April 12, 1996, Cuccia's symptomatology was probably comparable to his condition prior to the December 1995 accident, the record shows that Cuccia's knee continued to require treatment due to complaints of pain and swelling following the 1995 accident. As noted above, after returning to work for Barber Brothers, Cuccia eventually ceased his employment due to pain he was experiencing in carrying out his normal job duties.
Additionally, after leaving Barber Brothers, Cuccia continued to experience pain and swelling in his left knee and, consequently, worked for several employers in an attempt to find employment he could perform which would not cause him continued problems with his knee. Finally, in October of 1996, he requested permission to return to Dr. Fambrough because of his continuing problems of pain and swelling in the knee. Thus, the record shows that Cuccia was relatively asymptomatic prior to the December 1995 work injury, but his knee has been symptomatic ever since that injury.
In refusing to render judgment declaring that Barber Brothers was not responsible for any future medical treatment, the workers' compensation judge apparently rejected, in part, Dr. Fambrough's opinions and accepted as true Cuccia's testimony concerning his need for continuing medical care attributable to injuries associated with the work injury. A trial court may accept or reject in whole or in part the opinion expressed by an expert. Furthermore, the trial court may substitute its own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Raney v. Wren, 98-0869, p. 14 (La.App. 1st Cir.11/6/98); 722 So.2d 54, 62.
Considering the foregoing and the record as a whole, we find no manifest error in the workers' compensation judge's conclusion that Barber Brothers failed to establish its entitlement to declaratory judgment, relieving it of further liability to Cuccia for future medical treatment.[2]

*825 CONCLUSION
For the above and foregoing reasons, the December 15, 1997 judgment of the workers' compensation judge is affirmed. Costs of this appeal are assessed against plaintiff, Barber Brothers Contracting Company.
AFFIRMED.

APPENDIX A

REASONS FOR JUDGMENT
Barber Brothers Contracting Company, hereafter called plaintiff, was the employer of Donald Cuccia, hereafter called defendant, when on December 7, 1995 defendant injured his left knee. Defendant had injured this left knee before, back in 1985 and his knee was operated on in 1986. (Actually defendant had two knee operations back then.) Plaintiff filed this suit seeking a declaratory judgment as to their legal responsibilities to defendant under the Louisiana Workers' Compensation Statutes. Defendant reconvened seeking further benefits.
Defendant was off work for over a year in connection with his first knee operations, but he had returned to work and had worked with heavy equipment for several construction companies before he went to work for plaintiff.[1] Defendant exhibited no disability from his first knee injury, but it must have had some effect on him because he favored his right knee and leg. This was evidenced by the atrophy in defendant's hip.[2] However this condition did not keep defendant from heavy duty work prior to his December 7, 1995 accident. This last accident at work aggravated the pre-existing condition of defendant's left knee. Defendant could do heavy duty work before the December 7, 1995 accident and afterward he cannot.
Dr. J.L. Fambrough, orthopedist, states that defendant has a thirty-five percent permanent partial disability. Dr. Fambrough further wrote that he could not break up the percentage between his old and new knee injury.[3] Dr. Fambrough states that defendant can go back to work.
The defendant has requested that he be allowed to be treated by another orthopedist. Although defendant was initially sent to Dr. Fambrough, he has been treated by Dr. Fambrough since his accident; he has been operated on by Dr. Fambrough; and after the first visit defendant made all of the appointments himself with Dr. Fambrough. Defendant has in effect, and for all practical purposes, chosen Dr. Fambrough as his treating orthopedist and the plaintiff does not have to agree to allow defendant to choose another orthopedist.[4][5]
There was never any disability set forth by any physician in connection with the accident defendant had in 1985. Defendant was doing heavy duty work when his 1995 accident happened and had been doing heavy duty work for some time. Dr. Fambrough wrote that the defendant had a 35% disability after his 1995 accident and stated that he could not divide this disability percentage between defendant's old accident and the 1995 accident. Now, since defendant was doing heavy duty work prior to his 1995 accident and now he is limited as to what he can do, his 35% *826 permanent partial disability is attributed to the 1995 accident. Under the statute[6] there is sixty-six and two-thirds of wages due for one hundred seventy-five weeks for the loss of a leg. Defendant's knee injury resulted in a 35% total partial disability, therefore defendant is due 61.25 weeks weekly compensation less the compensation previously paid for 23.7 weeks. Therefore the amount plaintiff owes defendant is the sum of $7,269.57 for the 37.55 weeks. There will be judgment accordingly and plaintiff is to pay court costs.
NOTES
[1] We note that the judgment is silent as to Barber Brothers' responsibility for Cuccia's future medical treatment. As a general rule, where a judgment is silent with respect to any demand which was an issue in the case under the pleadings, that silence constitutes an absolute rejection of the demand. Sun Finance Company, Inc. v. Jackson, 525 So.2d 532, 533 (La.1988).

In its disputed claim for compensation, Barber Brothers contended that it was not responsible for "workers' compensation benefits" for Cuccia's present medical condition. Moreover, in its amended pretrial statement, Barber Brothers contended that any of Cuccia's current or foreseeable future medical needs related solely to his pre-existing knee condition, and, therefore, were not the responsibility of Barber Brothers. Also, at the beginning of trial, one of the issues presented to the workers' compensation judge was whether Cuccia's 1995 work injury was fully healed, thereby relieving Barber Brothers of any "future liability ... for benefits or treatment to the left knee."
We conclude that the issue of Barber Brothers' liability for further medical care and treatment was an issue presented to the workers' compensation judge and that the silence in the judgment as to this issue constitutes rejection of Barber Brothers' demand for a judicial declaration relieving it of future liability.
[2] In reaching this conclusion, we express no opinion as to Barber Brothers' obligation to Cuccia for any specific medical expenses which may arise in the future. An employer's liability to an employee for medical expenses arises only as the medical expenses are incurred. Spencer v. Gaylord Container Corporation, 96-1230, p. 8 (La.App. 1st Cir.3/27/97); 693 So.2d 818, 824. An employee is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to the employee. Prevost, 95-0224 at p. 5; 665 So.2d at 404.
[1] See deposition of Donald Cuccia for details of his previous and present employment.
[2] See letter dated September 15, 1997 of Dr. J.L. Fambrough.
[3] See Dr. Fambrough's September 1997 letter.
[4] See LA R.S. 23:1121-B.
[5] Also see Guillotte v. Dynamic Offshore, 628 So.2d 234 at page 236 (La.App. 3 Cir.1993).
[6] See LA R.S. 23:1221(4)(h).