924 So.2d 1086 (2006)
Danan HUGHES
v.
NEW ORLEANS SAINTS & LWCC.
No. 05-CA-712.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 2006.
*1087 Robert L. Hackett, Atlanta, Georgia, for Appellee, Danan Hughes.
Michael H. Rubin, Emily B. Grey, David K. Johnson, Baton Rouge, Louisiana, for *1088 Appellants, New Orleans Saints and Louisiana Workers Compensation Corporation.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY, and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
In this workers' compensation case, defendants, New Orleans Saints and Louisiana Workers Compensation Corporation ("LWCC") appeal the judgment finding that claimant, Danan Hughes, was entitled to medical expenses, indemnity benefits, supplemental earnings benefits, interest, penalties and attorneys fees. For the following reasons, we reverse.

Facts and Procedural History
On April 19, 1999, Danan Hughes signed a standard National Football League ("NFL") Player's Contract to play for the New Orleans Saints.[1] According to the contract, Hughes would be paid $400,000.00 in "equal weekly or bi-weekly installments over the course of the applicable regular season period, commencing with the first regular season game played by the Club...." On August 22, 1999, Hughes sustained a career-ending cervical spine injury while playing in a pre-season football game between the Saints and the Indianapolis Colts. On September 5, 1999, which was prior to the beginning of the regular football season, Hughes was released by the Saints. At the time of his release, Hughes had received $33,182.93 in compensation from the Saints, which included a signing bonus of $25,000.00, payment of $5,257.19 for attending training camp, $685.74 for attending mini-camps, and $2,240.00 in work-out pay. Further, it is undisputed that the Saints paid Hughes a severance of $60,000.00 in lieu of workers compensation benefits.
In October of 1999, Hughes entered the finance field. His federal tax return for 1999 reflects his total income as $55,225.00. His federal tax return for 2000 reflects his income as $165,973.00. In 2001, his federal income tax return reflects income of $123,889.00. His federal income tax return reflects income of $166,871.00 in 2002. In 2003, his federal tax return reflects income of $206,904.00.
On April 27, 2000, Hughes filed a Disputed Claim for Compensation seeking wage benefits, medical treatment, disability status, and penalties and attorneys fees. Specifically, Hughes alleged that he was entitled to benefits based on the salary listed in his contract, which was $400,000.00, not the actual compensation he received before he was released. Hughes subsequently filed a claim for supplemental earnings benefits. On August 4, 2000, the Saints and LWCC answered with a denial of all claims and sought to assert their right "to reduce benefits as provided for in LSA-R.S. . . . 1225(D)."
Trial commenced on January 13, 2005. At trial, claimant and the Saints and LWCC offered exhibits including the NFL Collective Bargaining Agreement; opinion disposing of In the Matter of an Arbitration between National Football League Players Association, on behalf of Kyle Freeman and National Football League Management Council on behalf of the Los Angeles Raiders; deposition of Richard A. Berthelson, General Counsel, NFL Players Association; transcript of the Louisiana House of Representatives' Labor and Industrial Relations Committee hearing on Act 561 of 2004 seeking repeal of LA. R.S. 23:1225(D); transcript of the Louisiana *1089 Senate's Labor and Industrial Relations Committee hearing on Act 561 of 2004 seeking repeal of LA. R.S. 23:1225(D); insurance documents; deposition of claimant, Danan Hughes; newspaper article regarding Collective Bargaining Agreement; OWC judgment in Dombrowski v. New Orleans Saints and LWCC; claimant's income tax returns for 1999 through 2003; claimant's medical bills and reports; Notice of Termination; the contract between the parties; claimant's pre-release earnings for 1999; claimant's Acknowledgement of Freedom from Injury and deposition from Dennis Curran. Further, the parties agreed to submit the matter after filing of post-trial briefs.
On March 8, 2005, the workers' compensation judge issued her ruling that the claimant was entitled to supplemental earnings benefits of $367.00 per week from August 22, 1999 through the present and continuing. Further, the claimant was entitled to reimbursement for medical expenses, medication expenses, and transportation expenses subject to a credit to defendants for any medicals paid by them. Finally, the workers' compensation judge found that the defendants were arbitrary and capricious in their refusal to pay indemnity, medical expenses, and transportation expenses and awarded $8,000.00 in penalties and $10,000.00 in attorneys' fees. On July 13, 2005, the workers' compensation judge issued written reasons for judgment, which included the following findings of fact:
(1) Claimant, Danan Hughes, was injured by accident, during the course and scope of his employment with the New Orleans Saints on August 21, 1999.
(2) Claimant is entitled to payment of supplemental earnings benefits.
(3) Claimant is entitled to reimbursement for out-of-pocket medical expenses.
(4) Claimant is entitled to reimbursement for medication expenses, transportation expenses and any outstanding medical expenses.
(5) Defendants did not reasonably controvert the claim as required.
(6) Defendants have been arbitrary and capricious in their refusal to pay supplemental earnings benefits, medical expenses, and transportation expenses.
(7) Defendants are entitled to a credit for any medical expenses,[sic] that have already been paid for by them.
(8) Defendant's[sic] actions warrants[sic] the payment of multiple penalties and attorneys fees.
(9) All costs are assessed against the defendants.
The workers' compensation judge further stated in her written reasons that the 2004 repeal of La. R.S. 23:1225(D) was "curative" and, thus, required no statement of retroactivity. Accordingly, defendants were not entitled to a credit for severance payments made in lieu of workers' compensation benefits under that statute. Thus, claimant was entitled to workers' compensation benefits retroactive to his date of injury, including, but not limited to, supplemental earnings benefits and all reasonable and necessary medical expenses related to his injury with the Saints.
Defendant filed a suspensive appeal, alleging three assignments of error: the workers' compensation judge erred in holding that the repeal of workers' compensation statute retroactively changes the legal impact of the statute that was in effect at the time the injury occurred; the workers' compensation judge erred in failing to calculate claimant's pre-injury wages under La. R.S. 23:1021(12)(d); and *1090 the workers' compensation judge erred in awarding interest, penalties and attorneys fees against the defendants.

Law and Argument
The appellate court's review of the workers' compensation judge's findings of fact is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Starkman v. Munholland United Methodist Church, 97-661 (La.App. 5 Cir. 1/14/98), 707 So.2d 1277, 1284, writ denied, 98-0400 (La.3/27/98), 716 So.2d 891. A court of appeal may not overturn a judgment of the workers' compensation judge absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Barber Bros. Contracting Co. v. Cuccia, 98-0675 (La.App. 1 Cir. 4/1/99), 734 So.2d 820.
In their first assignment of error, defendants argue that the workers' compensation judge erred in holding that the repeal of La. R.S. 23:1225(D) retroactively changed the legal impact of the statute that was in effect on the date the claimant's contract was signed and the date that the injury occurred.
La. R.S. 23:1225(D), which was repealed by Acts 2004, No. 561, § 1, provided:
The compensation benefits payable to a professional athlete under any provision of this Chapter shall be reduced or offset by an amount equal to the total amount of benefits, wages, or other type of payment mentioned in any part of this provision on a dollar-for-dollar basis and not just on a week-to-week basis, if a professional athlete receives payment or remuneration from any of the following or payment of any type from any of the following:
(1) Any wages or benefits payable or paid to the athlete.
(2) A collective bargaining agreement.
(3) A contract of hire of any type.
(4) Any type of severance pay.
(5) Any type of injured reserve pay.
(6) Any type of termination pay.
(7) Any grievance or settlement pay.
(8) Any workers' compensation benefit of any type.
(9) Any other payment made to the professional athlete by the employer pursuant to any contract or agreement whatsoever.
In this case, the workers' compensation judge held that "the participants in the 2004 [Louisiana Legislature's] Labor Committee hearings clearly intended to cure or remedy the past ills created by the passage of La. R.S. 23:1225(D) in 1993. As a curative statute, no specific statement of retroactivity is needed. Therefore, the 2004 repeal of La. R.S. 23:1225(D) means that ... it is as if La. R.S. 23:1225(D) never existed."
We disagree. Our review of the transcripts of the hearings, which were introduced as evidence at trial, cited by the workers' compensation judge that reveals the exact opposite conclusion. We found testimony from Representative Murray, the author of the bill that eventually was enacted to repeal La. R.S. 23:1225(D), opposing making the repeal retroactive. Further, we cannot agree with the illogical syllogism that this repeal was "curative," and, thus, automatically retroactive. See La. C.C. art. 6. Thus, we find that the workers' compensation judge made an error of law in her ruling.
[W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine *1091 a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. [Citations omitted.]
Evans v. Lungrin, 94-0541 (La.2/6/98), 708 So.2d 731, 735.
After our de novo review of the record, we find that the statute, although it was repealed in 2004, was effective when Hughes signed his contract with the Saints and when he was injured while playing for the Saints. Accordingly, under Green v. New Orleans Saints, 00-0795 (La.11/13/00), 781 So.2d 1199 and Jerich v. New Orleans Saints, 00-1299 (La.App. 5 Cir. 12/27/00), 776 So.2d 1283, we conclude that the Saints are entitled to a dollar-for-dollar credit for the $60,000.00 paid to Hughes pursuant to the severance agreement, and are not obligated to pay weekly indemnity benefits until that amount is exhausted.
In their second assignment of error, the Saints and LWCC argue that the workers' compensation judge used an incorrect pre-injury wage amount to calculate Hughes' level of supplemental earnings benefits. We agree. La. R.S. 23:1221 sets out the schedules of compensation for the various categories of injuries within the statute. Claimant clearly does not fit within either the permanent total or temporary total disability categories. See La. R.S. 23:1221(1)-(2). The statute provides for supplemental earnings benefits in La. R.S. 23:1221(3) as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
La. R.S. 23:1221(3) places the initial burden to prove disability on the claimant. In order to recover, the employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/38/94), 633 So.2d 129, 132. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. Id.
Reviewing the facts related above, we conclude that the workers' compensation judge again made an incorrect conclusion of law in determining that the claimant had established by a preponderance of *1092 the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. It is clear that workers' compensation judge evaluated Hughes' status based on his promised contractual salary of $400,000.00. Although the contract that Hughes signed promised a salary of $400,000.00 paid in "equal weekly or bi-weekly installments over the course of the applicable regular season period, commencing with the first regular season game played by the Club," it is undisputed that Hughes was released on September 5, 1999 before the regular season commenced.
Our review of the evidence again reveals that Hughes' pre-injury wages earned from his pre-season participation in Saints' training camps and work-outs was $33,182.93. Thus, Hughes is only entitled to supplemental earnings if he can prove that he cannot earn 90% of $33,182.93. The record reflects that, although the claimant cannot return to play professional football, he has been working as a loan officer since six weeks after his injury earning more than 90% of $33,182.93. Accordingly, we find the claimant is not, therefore, entitled to supplemental earnings benefits.
The defendants' final assignment of error seeks review of the claimant's award of penalties and attorneys fees for their alleged arbitrary and capricious refusal to pay benefits. La. R.S. 23:1201(F) provides for assessment of a penalty and attorney fees where the employer or insurer has refused or failed to pay benefits due. However, the penalty and attorney fees do not apply if the claim is reasonably controverted. To determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed. Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98) 721 So.2d 885, 890.
Reviewing the evidence in the case, it is clear that the claim was reasonably controverted based on the information available to the employer. Notably, the Saints and LWCC have paid Hughes a severance in lieu of compensation. Further, based upon the evidence available to the defendants, claimant was not entitled to supplemental earnings benefits. Accordingly, claimant is not entitled to penalties and attorneys fees for the refusal to pay him compensation.
Based on the foregoing, we find that the trial judge erred as a matter of law in awarding claimant supplemental earnings benefits, workers' compensation benefits, medical expenses, medication expenses, transportation expenses, and penalties and attorneys fees. Accordingly, we reverse the March 8, 2005 judgment and find in favor of the defendants, New Orleans Saints and LWCC. Costs of this appeal are to be split equally between the parties.
REVERSED.
NOTES
[1] The Player's Contract is a standard contract developed pursuant to the Collective Bargaining Agreement between the National Football League and the NFL's Players Association Clubs, which includes the Saints.