996 So.2d 637 (2008)
Richard NEWSOME
v.
NEW ORLEANS SAINTS and Louisiana Workers Compensation Corporation.
No. 08-CA-311.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 2008.
*638 Frank A. Bruno, Attorney at Law, New Orleans, LA, for Plaintiff/Appellee.
David K. Johnson, Attorney at Law, Baton Rouge, LA, for Defendants/Appellants.
Panel composed of Judges MARION F. EDWARDS, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
FREDERICKA HOMBERG WICKER, Judge.
In this workers' compensation case, defendants, New Orleans Saints and Louisiana Workers Compensation Corporation (hereinafter "LWCC") appeal the judgment finding that the claimant, Richard Newsome, was entitled to benefits based on his average weekly wage calculated using his contract salary, that his August 3, 2002 injury during training camp was related to his subsequent knee surgery, and that he was entitled to any benefits beyond November 1, 2005. For the following reasons, we reverse in part, affirm in part, and remand.

FACTS
On August 3, 2002, while employed as a professional football player for the New Orleans Saints, Richard Newsome sustained an injury to the lateral aspect of his left thigh during training camp. Newsome continued to play, as required, in preseason games with the assistance of pain injections which the New Orleans Saints' team physician administered. On September 1, 2002, prior to the beginning of the regular season, the Saints' organization released Newsome from their roster of players.
Soon after his release, Newsome's treating physician determined that he had also injured his knee. On January 6, 2003, Newsome underwent surgery for the injury. *639 He continues to try to return to professional football.
On March 21, 2003, Newsome filed an amended disputed claim for compensation. Newsome stated in that document that his average annual salary was $240,000.00. The Saints and LWCC answered, and denied Newsome's annual salary was $240,000.00 as of the date of his injury. They also denied that he sustained a permanently disabling injury because of the August 2002 accident, and further contended that he was not temporarily disabled, permanently disabled, partially disabled, or suffering from a loss of earning capacity.
At the October 4, 2007 trial in workers' compensation court, the parties stipulated that they would submit all of their documentary evidence to the court and would follow up with post-trial memoranda. On December 18, 2007, the court issued a judgment and found as follows:
(1) that the claimant was injured during the course and scope of his employment on August 3, 2002;
(2) that he is entitled to temporary total disability benefits from August 3, 2002 through December 31, 2003 in the amount of $398.00 per week;
(3) that he is entitled to medical expenses, medication expenses, transportation expenses, vocational rehabilitation expenses and retraining for these injuries in accordance with the law;
(4) that there is a direct connexity between claimant's accident on August 3, 2002 and his fractured left knee and thigh injuries;
(5) that his average weekly wage should be calculated in accordance with the law, from his annual salary of $298,000.00;
(6) and that the knee surgery was connected to the accident of August 3, 2002.
Defendant filed a suspensive appeal, alleging three assignments of error: the trial court erred in basing the calculation of claimant's average weekly wage on his contract salary of $298,000 per year rather than his actual earnings; that the trial court erred in its holding that the claimant's accident of August 3, 2002 was in anyway related to his subsequent knee surgery; that the trial court erred in its holding that the claimant was entitled to benefits of any type beyond November 1, 2005.

LAW AND ARGUMENT
The appellate court's review of the workers' compensation judge's findings of fact is governed by the manifest error or clearly wrong standard. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. A court of appeal may not overturn a judgment of the workers' compensation judge absent an error of law or a factual finding, which is manifestly erroneous or clearly wrong. Hughes v. New Orleans Saints & LWCC, 05-712 (La.App. 5 Cir. 2/27/06), 924 So.2d 1086, citing Barber Bros. Contracting Co. v. Cuccia, 98-0675 (La.App. 1 Cir. 4/1/99), 734 So.2d 820.
In their first assignment of error, Appellants argue that the workers' compensation judge erred in basing her calculation of the claimant's average weekly wage on his contract salary of $298,000 per year rather than his actual earnings.
In Hughes v. New Orleans Saints & LWCC, supra, this Court addressed similar circumstances.[1] In Hughes, the workers' *640 compensation judge incorrectly evaluated the claimant's status based on his promised contractual salary of $400,000. Id. at 1092. This Court found that although Hughes' contract promised a salary of $400,000 paid in "equal weekly or bi-weekly installments over the course of the applicable regular season period, commencing with the first regular season game played by the Club," it was improper to use that number to calculate benefits because Hughes was "released on September 5, 1999 before [emphasis added] the regular season commenced." Id.
Likewise, in the instant case, the workers' compensation judge calculated the claimant's average weekly wage based on his promised annual salary of $298,000. The record reveals however, that the Saints released the claimant from the team on September 4, 2002, prior to the commencement of the regular 2002 season. As such, he was not actually entitled to the wages as set forth in his 2002 NFL contract because he was not, as delineated in the agreement, a member of the Saints "active roster." According to the record, the claimant's wages for 2002, including preseason play, totaled $34,909.34. This is the number that should be used for purposes of determining the claimant's benefits. As such, we remand this issue to the trial court for re-calculation of the claimant's supplemental earnings benefits in accordance with his pre-injury wages.
Appellant argues in its second assignment of error that the workers' compensation judge erred in holding that the claimant's August 3, 2002, accident led to his subsequent knee surgery. According to the claimant's deposition, he underwent surgery on his knee in January 2003. Appellant argues that insufficient evidence was admitted to establish the reason for the surgery, and further that if any knee condition did exist, it pre-dated Mr. Newsome's time with the Saints.
The workers' compensation court concluded that Mr. Newsome's knee surgery "was connected to the accident of August 3, 2002." In a claim for personal injuries, the plaintiff bears the burden of proving a causal relationship between an accident and subsequent injury by a preponderance of the evidence. Poland v. State Farm Mutual Insurance Co., 03-1417 (La.App. 1 Cir. 6/25/03), 885 So.2d 1144, 1147. Whether an accident caused a person's injuries is a question of fact, which should not be reversed on appeal absent manifest error. Id. A plaintiff's injuries are presumed to have resulted from an accident if the injured person was in good health prior to the accident but, commencing with the accident, the symptoms of the disabling condition manifest themselves, providing that the medical evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991). In order to defeat the presumption of causation, the defendant must show that some other particular incident could have caused the injury in question. Id.
The test for determining the causal relationship between an accident and subsequent injury is whether the plaintiff proved through medical or lay testimony that it is more probable than not that the accident caused the subsequent injuries. Chavers v. Travis, 04-992(La.App. 4 Cir. 4/20/05), 902 So.2d 389, 394. Expert medical testimony is only required when the conclusion regarding medical causation is one that is not within common knowledge. Id. at 395.
There is limited medical evidence in this case. However, we find no evidence of a pre-existing knee injury. Conversely, the records that are available, namely the *641 "New Orleans Saints Football Club Orthopedic Examination" forms, specifically state that Mr. Newsome had no history of knee injuries and that his range of motion was "normal." Another report submitted by the appellant from Dr. Arthur Rettig states that as of a February 26, 2001 physical, there is no evidence of acute bone injury, and the "joint spaces [between the knees are] preserved." The report goes on to state that "images of the patellar tendon demonstrate no findings to indicate significant patellar tendinosis." This is the last report in evidence prior to the August 2002 injury confirming that Mr. Newsome's left knee functioned normally.
It is evident from the record that all of the team physicians who saw the claimant prior to the August 2002 injury noted that he had no knee problems. Appellant also fails to produce any evidence that the claimant suffered some intervening accident that would have led to the subsequent knee surgery. Without any evidence or indication that Mr. Newsome had any other accident or incident following the August 3, 2002 injury, it was reasonable for the trial judge to conclude that the claimant's "knee surgery was connected to the accident of August 3, 2002."
In its final assignment of error, Appellant asserts that the trial court erred in its holding that the claimant was entitled to benefits of any type beyond November 1, 2005.
This Court addressed a nearly identical argument in Hughes v. New Orleans Saint & LWCC, supra. In Hughes, the appellant argued that the workers' compensation judge used an incorrect pre-injury wage amount to calculate the injured player's level of supplemental earnings benefits. Id. at 1091. As we discussed, La. R.S. 23:1221 sets out the schedules of compensation for the various categories of injuries within the statute. Id. The injuries sustained by Mr. Hughes did not fit within either the permanent total or temporary total disability categories. The statute provides for supplemental earnings benefits in La.R.S. 23:1221(2) as follows:
(a) for injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and threetenths times the wages as defined in R.S. 23:1021(10).

Id. at 1091.
La. R.S. 23:1221(3) places the initial burden to prove disability on the claimant. In order to recover, the employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. Id., citing, Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/38/94), 633 So.2d 129, 132. This Court concluded in Hughes that the workers' comp judge made "an incorrect conclusion of law in determining that the claimant had established by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages that he earned before *642 the accident." The workers' comp judge had erroneously calculated Mr. Hughes salary based on his promised contractual salary of $400,000.00. However, the Saints released Hughes before the season began, and before he was entitled to begin receiving his contractually agreed upon salary. Id.
Based on this Court's prior interpretation of Hughes, Newsome's salary for purposes of workers' compensation should be calculated using his pre-season salary. He was not on the roster as of the beginning of the season. Therefore he was not entitled to the agreed upon earnings stipulated in his contract with the Saints. Thus, when calculating supplemental earnings, in accordance with La.R.S. 23:1221(3)(d)(i), the claimant would only be entitled to supplemental earnings if he was unable to earn at least 90% of his pre-season salary. The evidence in the record does not support such a finding. As such, we find the trial court erred in finding that the claimant is entitled to continuing benefits from January 1, 2004.

CONCLUSION
Accordingly, that portion of the workers' compensation judge's ruling which finds the claimant's salary to be $298,000 is reversed. Our review of the record shows that the claimant's average weekly wage should have been calculated based on his pre-season pay. We remand this portion of the judgment to the trial court for proper calculation in accordance with this finding. We further find that the workers' compensation judge's ruling that the claimant's knee surgery was directly related to his pre-season injury is correct based on the evidence submitted. Finally, we find that the court's finding that the claimant is entitled to supplemental earnings benefits from January 1, 2004 and continuing is inconsistent with the law and evidence and should be reversed.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.
NOTES
[1] The judge before whom Hughes v. New Orleans Saints, supra, was tried was Sylvia Steib, the same judge who presided over the instant case.