MARC E. JOHNSON, Judge.
| gPlaintiff/appellant, in proper person, appeals a judgment denying him workers’ compensation benefits. For the reasons that follow, we affirm.
Appellant filed a claim for workers’ compensation benefits asserting that for 40 days, between October 31, 2007 and January 23, 2008, he was exposed to carbon monoxide from an exhaust leak in the truck he was assigned to drive. He claimed that as a result of the carbon monoxide exposure, he suffered high blood pressure, migraines, sleep apnea, and shortness of breath/COPD. The workers’ compensation judge ruled that appellant failed to meet his burden of proving he was exposed to carbon monoxide from October through January during the course and scope of his employment. She noted that appellant proved an exhaust leak existed in the truck in January 2008, which was fixed on January 21st, but that he failed to prove carbon monoxide actually entered the cab of the truck or that he was actually exposed to carbon monoxide. She further found appellant failed to meet his burden of proving his medical conditions were causally related to any carbon monoxide exposure. As such, the workers’ compensation judge concluded appellant was not entitled to any workers’ compensation benefits.
|sWe note that appellant’s brief is not in compliance with Rule 2-12.4 of the Uniform Rules — Courts of Appeal. Although appellant states in general that he objects *56 to the trial court’s judgment of November 16, 2009, which is the judgment denying him workers’ compensation benefits, he fails to specify assignments of error and the issue(s) presented for appeal. To avoid delay in this case, we will not require appellant, who is in proper person, to file a new brief under Rule 2-12.13. Rather, we will review the correctness of the judgment denying appellant workers’ compensation benefits under La.C.C.P. art. 2164, which provides that “[t]he appellate court shall render any judgment which is just, legal, and proper upon the record of appeal.”
At trial, it was established that appellant, Son Elder, began his employment as a truck driver with defendant/appellee, Siarc Incorporated Oil and Fuel, a wholesale oil and gas distributor, on September 24, 2007. Mr. Elder testified that he first discovered the truck had an exhaust leak on October 23, 2007, while he was still in training. According to Mr. Elder, he told Robert Crais, the owner of Siarc, about the leak on that day and that Mr. Crais said he would take care of it. Mr. Elder stated he did not mark the problem on the inspection report for the truck because Mr. Crais told him that he handled the paperwork.
Mr. Elder explained that he started driving the Mack truck at issue on October 31, 2007. He stated he told Mr. Crais that the truck still had an exhaust leak and that Mr. Crais again told him that he would take care of it. Mr. Elder testified that at the end of his work shift, he felt bad from the carbon monoxide exposure. Over the next three months, Mr. Elder continued to drive the truck but not continuously. Mr. Elder explained that every day or two he told Mr. Crais that the truck had an exhaust leak and it needed to be fixed. He stated that every time |4he told Mr. Crais about the problem, Mr. Crais would let him drive a different truck the next day.
On January 5, 2008, the Mack truck had a flat tire. According to Mr. Elder, he fixed the tire and Mr. Crais told him to take the truck to Tony, a mechanic, for inspection. Mr. Elder stated that Tony did not have a chance to look at the truck on January 5th and he had to bring it back to him on January 7th at which time Tony ordered a part for the truck. Mr. Elder testified the truck was not fixed until January 21st. He stated he continued to drive the truck off and on during the interim. He stated he told Kevin Crais, Mr. Crais’ son who worked with the company, on January 8th about the exhaust leak problems and that the carbon monoxide exposure was making him sick, but Kevin told him there was nothing wrong with the truck. Mr. Elder last worked with Siarc on January 23, 2008 and then quit. He testified he quit because appellee refused to give him medical attention for the carbon monoxide exposure he suffered while driving their truck.
Robert Crais did not recall Mr. Elder reporting a carbon monoxide leak on October 31, 2007, and denied ever telling Mr. Elder not to fill out a driver’s inspection report. He testified he periodically drove the truck between October 2007 and January 2008 and never noticed an exhaust leak. He pointed out that he personally filled out a driver’s inspection report on November 27, 2007, and did not note that the truck had an exhaust leak. Mr. Crais explained that he has never turned down an employee’s request for truck repairs and stated that the truck was repaired when Mr. Elder reported the exhaust leak. Although he did not recall the date, Mr. Crais noted the work ticket showing the repair was done on January 21, 2008. He explained the 18 inch flex pipe, which runs underneath the bottom of the truck and *57 connects the engine to the muffler, was repaired. He stated there is no connection of the flex pipe or exhaust inside the cab of the truck.
|sRon Derenbecker, a Siarc employee, corroborated Mr. Crais’ testimony. He testified he has never had a requested repair to a company truck refused and stated that things were fixed when they needed to be fixed. Mr. Derenbecker further stated that Mr. Crais told Mr. Elder to take the truck in for repairs on the same day Mr. Elder reported the exhaust leak.
Kevin Crais testified that the truck was fixed on January 21st, after Mr. Elder brought the exhaust leak problem to his attention the day before. Kevin stated that he did not recall Mr. Elder complaining about an exhaust leak prior to that time. Kevin explained that the company had extra trucks available for driving and, therefore, the timing of the repair was not an issue.
Mr. Elder testified that by the beginning of December, he was coughing at night, he could not sleep and he started having migraine headaches. He attributed his health problems to carbon monoxide exposure from the exhaust leak. He scheduled a doctor’s appointment for the end of December, but stated he was unable to keep it because appellee would not let him off of work. Mr. Elder stated he first saw a doctor for his health problems on January 18, 2008 and was subsequently diagnosed with high blood pressure, shortness of breath, migraines, sleep apnea and small vessel disease. He admitted on cross-examination that he had borderline hypertension in 1998, but that he was never prescribed medication. He pointed out that he had a pre-employment physical one month before his employment with Siarc which did not indicate he had high blood pressure. Additionally, Mr. Elder admitted he had seen a doctor in 2005 with complaints of inability to sleep but claimed it was due to shoulder pain at the time. He further admitted that he has been a smoker for over 30 years.
Mr. Elder submitted his medical records, which showed he was diagnosed with high blood pressure on January 18, 2008 and prescribed medication. A | finotation in his records on that date showed his headaches were likely due to his high blood pressure. Additionally, a sleep study was ordered. The sleep study revealed Mr. Elder suffered from obstructive sleep apnea. Mr. Elder subsequently saw Dr. Hugh Fleming, a neurologist, in April 2008. Dr. Fleming noted Mr. Elder’s headaches could be secondary to chronic carbon monoxide exposure but ordered a head MRI because of the continued nature of his headaches. The MRI showed Mr. Elder suffered from small vessel disease. When asked whether Mr. Elder’s headaches were related to carbon monoxide exposure, Dr. Fleming responded that “Mr. Elder’s MRI is non-specific and does not show cause for his history of headaches.” The records also show that in response to his complaints of shortness of breath, Mr. Elder underwent a pulmonary evaluation to rule out chronic obstructive pulmonary disease (COPD). It was noted that there was poor patient effort in the pulmonary evaluation.
As part of its defense, Siarc presented the deposition of Dr. Douglas Swift, the co-medical director of East Jefferson Hospital’s Occupational Medicine Clinic. Dr. Swift testified that he had reviewed Mr. Elder’s medical records and found nothing to support the proposition that Mr. Elder’s medical condition is associated with carbon monoxide exposure. He stated that carbon monoxide is a chemical asphyxiant that removes oxygen from the environment and noted that smoking is a source of *58 carbon monoxide. Dr. Swift explained that in a person, carbon monoxide binds to hemoglobin in the blood and prevents the hemoglobin from carrying oxygen throughout the body. He stated the effects of carbon monoxide on the body are quickly observable, but that the effects cease within a few hours after the person is removed from the carbon monoxide exposure.
Dr. Swift explained that even if Mr. Elder had been exposed to carbon monoxide while driving a truck, his symptoms should have improved once he was 17out of the cab. Dr. Swift noted that the fact Mr. Elder’s headaches had not improved as of April 2008, despite the fact he had not driven the truck since January 2008, demonstrated his condition was not related to chronic carbon monoxide exposure. He stated that carbon monoxide exposure does not lead to chronic headaches. Additionally, Dr. Swift explained that carbon monoxide exposure shows on an MRI in the basal ganglia area and not the white matter where Mr. Elder demonstrated high signal intensity. Dr. Swift further stated that carbon monoxide exposure does not cause lung damage or affect lung function. He added that Mr. Elder’s daytime sleepiness was attributable to his sleep apnea and not to any carbon monoxide exposure.
The trial court found that Mr. Elder proved the truck had an exhaust leak sometime in January 2008 that was fixed on January 21, 2008. However, the trial court found . Mr. Elder failed to prove he experienced an exhaust leak during the entire period of October 31, 2007 through January 23, 2008. Additionally, the trial court determined Mr. Elder failed to prove that carbon monoxide actually entered the truck cab or that he was actually exposed to carbon monoxide because of the exhaust leak. Thus, the trial court concluded Mr. Elder failed to prove he suffered an injury or occupational disease as a result of his employment with defendant. The trial court further found Mr. Elder failed to meet his burden of proving a causal relationship between his medical conditions and the alleged carbon monoxide exposure. As such, the trial court determined Mr. Elder was not entitled to any workers’ compensation benefits.
The appellate court’s review of the workers’ compensation judge’s findings of fact is governed by the manifest error standard. A court of appeal may not overturn a judgment of the workers’ compensation judge absent an error of law or a factual finding, which is manifestly erroneous or clearly wrong. Newsome v. New Orleans Saints, 08-311, p. 4 (La.App. 5 Cir. 10/14/08), 996 So.2d 637, 639. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though we may feel that our own evaluations and inferences are as reasonable. Thus, if there are two permissible views of the evidence, a fact finder’s choice of them can never be manifestly erroneous or clearly wrong. Cenacle Retreat House v. Dubose, 04-571, p. 4 (La.App. 5 Cir. 11/30/04), 888 So.2d 409, 411, writ denied, 05-157 (La.3/24/05), 896 So.2d 1040.
An employee is entitled to workers’ compensation benefits if he suffers a personal injury by an accident arising out of and in the course and scope of his employment. La. R.S. 23:1031. The chain of causation required by the workers’ compensation statutory scheme is (1) the employment causes the accident, (2) the accident causes injury, and (3) the injury causes disability. La. R.S. 23:1031; Buxton v. Iowa Police Dept., 09-520, pp. 11-12 (La.10/20/09), 23 So.3d 275, 283. The employee has the burden of proving a work-related accident and resulting injury by a *59 preponderance of the evidence. Viars v. St. Anthony’s Nursing Home, 02-1042, p. 4 (La.App. 5 Cir. 1/28/03), 836 So.2d 1143, 1145-46. The test for determining the causal relationship between an accident and subsequent injury is whether the claimant proved through medical or lay testimony that it is more probable than not that the accident caused the subsequent injuries. Newsome, 08-311 at 7, 996 So.2d at 640. Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the workers’ compensation judge. Brock v. Marathon Ashland Oil Refinery, 07-471, p. 8 (La.App. 5 Cir. 5/13/08), 986 So.2d 694, 699.
The workers’ compensation judge gave oral reasons for her judgment. She stated that the evidence showed the exhaust pipe was replaced on January 21, |fl2008. She noted that there was no evidence to show the length of time the pipe was leaking except appellant’s own testimony, which was not corroborated by any other testimony. The judge specifically stated that the statements of appellant’s co-worker and supervisors did not support appellant’s rendition of the facts.
The judge also noted there was no evidence of a relationship between appellant’s medical conditions and carbon monoxide exposure. She relied on the deposition testimony of Dr. Swift and noted Dr. Swift testified appellant did not have any medical condition associated with carbon monoxide exposure. She noted that Dr. Swift stated that appellant’s continued headaches after being removed from the environment is not indicative of carbon monoxide exposure but rather are likely attributable to his high blood pressure or sleep apnea. The judge also noted that Dr. Swift testified that neither sleep apnea nor lung damage is associated with carbon monoxide exposure. The judge acknowledged Dr. Fleming’s comment that appellant’s headaches could be secondary to carbon monoxide exposure but found that such a statement did not meet the preponderance of the evidence standard required. She further noted the MRI failed to confirm carbon monoxide exposure.
Upon review of the record, we do not find the trial court erred in determining appellant was not entitled to workers’ compensation benefits. The record supports the trial court’s findings that even if appellant was exposed to carbon monoxide, he failed to prove a causal connection between any carbon monoxide exposure and his current medical conditions. None of the evidence presented by appellant linked his medical conditions to carbon monoxide exposure. Although Dr. Fleming initially stated appellant’s headaches could be secondary to chronic carbon monoxide exposure, a subsequent MRI did not show this to be the case. Additionally, when directly asked whether appellant’s headaches were caused by carbon monoxide exposure, Dr. Fleming answered that appellant’s MRI | inwas non-specific and did not show the cause of his headaches. This evidence does not carry appellant’s burden of proving by a preponderance of the evidence that his medical condition was caused by carbon monoxide exposure. Furthermore, Dr. Swift testified that nothing in appellant’s medical records indicated any connection of his medical conditions to carbon monoxide exposure. Where evidence leaves the probabilities evenly balanced or shows only a possibility of a causative accident or leaves it to speculation or conjecture, then the claimant’s case must fail. Buxton v. Iowa Police Dept., 09-520 at 25, 23 So.3d at 291.
Accordingly, we affirm the judgment of the workers’ compensation judge denying *60 appellant workers’ compensation benefits for both indemnity and medical benefits.

AFFIRMED.